**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

_____
|                                     )
Marylyn Todd                          )
Albert Todd                           )
John Schmitt                          )
Monica Holm                           )
   Plaintiffs         )
             )   Case No.: 1:24-CV-00330-TSM
   v.                  )
             )   Plaintiffs Request Trial by Jury
             )
Christopher Sununu                    )
Sergeant Meghan Walsh                 )
Trooper Derek Myrdek                  )
Trooper Brandon Rivard                )
Trooper Daniel Livingstone            )
Captain Chad Lavoie                   )
Captain Mark Hall                     )
Trooper Brandon Stubbs                )
Trooper Charles O'Leary               )
New Hampshire State Police            )
John Does 1-10                        )
    Defendants      )
             )
_____

**AMENDED CIVIL COMPLAINT**

NOW COME the Plaintiffs, proceeding pro se, and bring this civil action pursuant to 42 U.S.C. § 1983 to redress violations of their rights under the First and Fourth Amendments to the United States Constitution.

_Marylyn Todd, et al v. Christopher Sununu, et al_
Case Number: 1:24-CV-00330
**Amended Civil Complaint**

1

This action arises from the warrantless arrests of Plaintiffs during the October 13, 2021 public meeting of the New Hampshire Governor and Executive Council. Plaintiffs attended that meeting to observe their government and to express their views on matters of public concern. During the meeting, Plaintiffs engaged in peaceful expression and, after another attendee was arrested and the meeting had already been paused, questioned why those arrests were occurring. Plaintiffs were then individually arrested without warrants and without probable cause.

The criminal charges arising from those arrests were ultimately dismissed. Plaintiffs allege that Defendants arrested them in retaliation for protected expression and without individualized probable cause, in violation of clearly established rights secured by the First and Fourth Amendments.

## **PARTIES**

1. Plaintiff **Marylyn Todd** is a natural person who has reached the age of majority. She maintains a residence at 17 Second Street, Windham, New Hampshire 03087, and a mailing address at 95050 Cheswick Oaks Drive, Fernandina Beach, Florida 32097.

2. Plaintiff **Albert Todd** is a natural person who has reached the age of majority. He maintains a residence at 17 Second Street, Windham, New Hampshire 03087, and a mailing address at 95050 Cheswick Oaks Drive, Fernandina Beach, Florida 32097.

3. Plaintiff, **John Schmitt**, is a natural person, who has reached the age of majority, and resides in this jurisdiction, maintaining a residential address at 31 Green Acres Road, Keene, New Hampshire, 03431.

4. Plaintiff **Monica Holm** is a natural person who has reached the age of majority and resides at 6 Mallard Drive, Hudson, New Hampshire 03051.

5. Defendant **Christopher Sununu** served as Governor of the State of New Hampshire at all times relevant to this Complaint. He is sued **solely in his individual capacity** for actions allegedly taken under color of state law.

6. Defendant **Sergeant Meghan Walsh** was, at all relevant times, a sworn member of the New Hampshire State Police acting under color of state law. She is sued in her individual capacity.

7. Defendant **Trooper Derek Myrdek** was, at all relevant times, a sworn member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

8. Defendant **Trooper Brandon Rivard** was, at all relevant times, a sworn member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

9. Defendant **Trooper Daniel Livingstone** was, at all relevant times, a sworn member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

10. Defendant **Captain Chad Lavoie** was, at all relevant times, a supervisory member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

11. Defendant **Captain Mark Hall** was, at all relevant times, a supervisory member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

12. Defendant **Trooper Brandon Stubbs** was, at all relevant times, a sworn member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

13. Defendant **Trooper Charles O'Leary** was, at all relevant times, a sworn member of the New Hampshire State Police acting under color of state law. He is sued in his individual capacity.

14. Defendant **New Hampshire State Police** is a law enforcement agency within the New Hampshire Department of Safety and, at all relevant times, employed or supervised members of the New Hampshire State Police involved in the events described herein.

15. Defendants **John Does 1–10** are law enforcement officers employed by the New Hampshire State Police or other agencies who participated in, directed, authorized, supervised, or otherwise were personally involved in the detention and arrest of Plaintiffs on October 13, 2021, but whose identities are presently unknown to Plaintiffs.

16. Plaintiffs will seek leave to substitute the true names of the John Doe Defendants if additional individuals are identified through discovery.

### JURISDICTION

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.

18. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3)–(4), which provides jurisdiction over civil rights actions.

19. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of Plaintiffs' rights under the First and Fourth Amendments to the United States Constitution.

*Marylyn Todd, et al v. Christopher Sununu, et al*
Case Number: 1:24-CV-00330
**Amended Civil Complaint**

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the events giving rise to these claims occurred in this District.

21. At all relevant times, Defendants acted under color of state law.

## FACTS COMMON TO ALL COUNTS

22. This action arises from the warrantless arrests of Plaintiffs during the October 13, 2021 public meeting of the New Hampshire Governor and Executive Council held at the New Hampshire Police Standards and Training Council in Concord, New Hampshire.

23. The October 13, 2021 meeting was a continuation of the Executive Council meeting originally scheduled for September 29, 2021, which had been adjourned after disruptions involving other attendees.

24. None of the Plaintiffs attended the September 29, 2021 Executive Council meeting. The September 29 meeting was adjourned after disruptions caused by other individuals. Plaintiffs had no involvement whatsoever in the events that led to the adjournment of that meeting.

25. The October 13, 2021 meeting was open to members of the public and addressed matters of significant public concern, including governmental actions relating to the State's response to the COVID-19 pandemic.

26. At the October 13, 2021 Executive Council meeting, Plaintiffs attended to oppose certain funding that Governor Sununu was advocating for. The Executive Council voted against approving that funding on October 13, 2021. Following Plaintiffs' arrests and the

imposition of bail conditions that prohibited them from attending subsequent Executive Council meetings, the same funding was later approved.

27. Plaintiffs attended the meeting peacefully to observe the proceedings, petition their government, and express their views regarding matters of public concern.

28. Plaintiffs remained seated and observed the proceedings for approximately ninety minutes before any arrests occurred.

29. During that period, the meeting proceeded in the ordinary course.

30. Before the meeting began, numerous members of the New Hampshire State Police were deployed throughout the meeting room, including near public seating areas, aisles, entrances, and exits.

31. Discovery produced in the related criminal proceedings reflects that law enforcement personnel had been assigned to an "arrest team" before the meeting commenced.

32. Discovery further reflects that officers were assigned specific operational responsibilities for the meeting before any Plaintiff was arrested.

33. Plaintiffs allege that these preparations were implemented before any conduct giving rise to the arrests at issue in this action occurred.

34.  During the meeting, Defendant Sergeant Meghan Walsh issued a general warning advising attendees that continued disruptions could result in arrest for disorderly conduct.

35. The warning was directed generally to the audience and was not based upon individualized conduct by any Plaintiff.

36. Defendant Christopher Sununu likewise advised attendees that individuals causing disturbances would be removed or arrested.

*Marylyn Todd, et al v. Christopher Sununu, et al*
Case Number: 1:24-CV-00330
**Amended Civil Complaint**

37. Again, the warning was directed generally to the audience and was not based upon individualized conduct by any Plaintiff.

38. Following those warnings, the meeting continued.

39. During the meeting, several attendees engaged in a brief, peaceful, silent demonstration by turning their backs toward the stage. The expression was a peaceful, non-disruptive symbolic demonstration.

40. The demonstration was peaceful, brief and did not interrupt the proceedings.

41. Plaintiffs remained in the public seating area throughout the demonstration.

42. The meeting continued following the silent demonstration.

43. Later in the meeting, attendee Terese Grinnell quietly uttered the single word, "Amen."

44. That statement was brief and low in volume. It is not audible on the State's own publicly available video recording, which does not capture the word itself or reflect any immediate pause or visible interruption of proceedings at the time it was spoken. The statement is discernible only on a separate recording made from directly behind the speaker.

45. Other attendees, including individuals seated in close proximity to Plaintiffs, made audible remarks during the meeting, including statements similar in nature to those attributed to Plaintiffs, and were not subjected to arrest.

46. Despite the minimal nature of the statement, officers approached and arrested the individual who had uttered "Amen."

47. The Executive Council meeting was then paused by Governor Sununu.

48. During that pause, multiple attendees, including Plaintiffs, appeared visibly confused as to the basis for the arrest.

49. While the meeting remained paused, Plaintiffs asked words to the effect of, "Why are they being arrested?"

50. Video recordings reflect that multiple other attendees in the immediate vicinity also asked why the individuals were being arrested during the same paused interval and were not subjected to arrest.

51. Plaintiffs' statements were brief, non-threatening, and directly related to the arrest then occurring in front of them. At the time Plaintiffs spoke, the meeting had already been paused and was not in active session. Plaintiffs' statements did not delay, interrupt, or interfere with any ongoing governmental function.

52. Shortly thereafter, officers individually approached Plaintiffs and placed them under arrest.

53. None of the Plaintiffs engaged in threatening or physically disruptive conduct at any time prior to their arrests. Rather, each Plaintiff, at most, made brief verbal statements in direct response to the arrests occurring in front of them.

54. Plaintiff Marylyn Todd was arrested by Defendant Meghan Walsh.

55. During Marylyn Todd's arrest, her minor child was separated from her while law enforcement officers completed the arrests.

56. Plaintiff Albert Todd was arrested by Defendants Derek Myrdek and Brandon Rivard.

57. Plaintiff John Schmitt was arrested by Defendants Chad Lavoie and Brandon Stubbs.

58. Plaintiff Monica Holm was arrested by Defendant Daniel Livingstone.

59. Each Plaintiff was arrested without a warrant.

60. No individualized warning is visible in the available video record for Plaintiffs Marylyn Todd, Albert Todd or John Schmitt prior to their arrests, and no document produced in the criminal discovery reflects that any such warning was given to them.

61. By contrast, upon information and belief, Defendant Mark Hall asserted that he provided a verbal warning to Plaintiff Monica Holm; however, video recordings reflect only that an officer briefly approached and spoke to Ms. Holm, and the content of that interaction is not audible.

62. Immediately following that interaction, Plaintiff Monica Holm sat down and appeared non-disruptive, making no audible statements and engaging in no visible conduct that could reasonably be interpreted as disruptive.

63. Within approximately one to two minutes, Defendant Livingstone approached and placed Ms. Holm under arrest.

64. No document produced in the criminal discovery identifies any specific conduct by Plaintiff Monica Holm during that interval that would constitute disorderly or disruptive behavior, and the charge against her was subsequently dismissed at an early stage.

65. At the time Plaintiffs were arrested, the meeting had already been paused by Defendant Sununu, and no official proceedings were actively underway.

66. Multiple video recordings, including those maintained by the State and attached hereto as (Exhibit C), capture the events described above and reflect the limited nature of Plaintiffs' conduct.

67. The statements attributed to Plaintiff Marylyn Todd in the charging documents attached hereto as (Exhibit A), are inconsistent with the available video evidence, which reflects

that she was objecting to the arrest of her child's father in the presence of her minor child, rather than making the statements attributed to her in those documents.

68. Video recordings reflect that Defendant Sununu repeatedly used a mobile device and engaged in nonverbal signaling, including head movements and nods, immediately prior to the initiation of arrests while presiding over the meeting.

69. Following their arrests, Plaintiffs were charged with disorderly conduct. The asserted factual basis for those charges was minimal and described inconsistently across official documents, including characterizations of the alleged conduct as 'yelled' in some instances and "uttered" in others, as reflected in the charging documents, (Exhibit A), and related criminal filings attached hereto as (Exhibit B).

70. The charging documents attached as (Exhibit A) were all executed by a single officer, Defendant Trooper Charles O'Leary, even though multiple officers participated in the arrests. The documents failed to identify which officers were responsible for arresting each Plaintiff. As a result, the identities of the individual officers involved in Plaintiffs' arrests were not disclosed and were difficult to determine. Plaintiffs also experienced delays in obtaining copies of the charging documents from the State.

71. The charging documents, attached hereto as (Exhibit A), provided only generalized descriptions of alleged conduct, requiring defense counsel to seek bills of particulars because the State had not clearly identified the specific conduct allegedly attributable to each Plaintiff.

72. The conduct attributed to Plaintiffs consisted of brief speech at a public meeting, including questioning law enforcement actions during a paused proceeding.

73. Following their arrests, Plaintiffs were released subject to bail conditions imposed in connection with the criminal prosecutions arising from the October 13, 2021 events.

74. Those bail conditions prohibited Plaintiffs from coming within one thousand feet of Governor Christopher Sununu.

75. Plaintiffs were further prohibited from attending Executive Council meetings involving Governor Sununu while those bail conditions remained in effect.

76. As a direct consequence of those conditions, Plaintiffs were prevented from attending public governmental proceedings they otherwise wished to attend.

77. Plaintiffs allege that these restrictions arose directly from the arrests challenged in this action.

78. Despite the arrests, Governor Sununu was able to resume and complete the Executive Council meeting, demonstrating that Plaintiffs' brief statements did not prevent the government from conducting its business.

79. The criminal prosecutions arising from the October 13, 2021 arrests were ultimately resolved in Plaintiffs' favor.

80. None of the Plaintiffs were convicted of disorderly conduct arising from the October 13, 2021 events.

81. Plaintiffs allege that the arrests, criminal prosecutions, and resulting bail restrictions caused them to suffer the injuries and damages for which they seek relief in this action.

## PERSONAL INVOLVEMENT OF EACH DEFENDANT

**Defendant Christopher Sununu**

82. At all times relevant to this Complaint, Defendant Christopher Sununu served as Governor of the State of New Hampshire and acted under color of state law.

83. Defendant Sununu presided over the October 13, 2021 Executive Council meeting at which the events giving rise to this action occurred.

84. During the meeting, Defendant Sununu personally addressed attendees concerning their conduct and warned that individuals who caused disturbances would be removed or arrested.

85. Plaintiffs allege that, immediately before arrests began, Defendant Sununu was observed using his cellular telephone and signaling officers before the law-enforcement response.

86. Immediately following those communications, the first arrest occurred and Defendant Sununu paused the meeting.

87. Plaintiffs allege, based upon the sequence of events, the discovery produced in the related criminal proceedings, and other evidence expected to be developed through discovery, that Defendant Sununu personally participated in or approved the law-enforcement response that resulted in Plaintiffs' arrests.

88. Following the arrests, Plaintiffs were subjected to bail conditions that specifically prohibited them from coming within 1,000 feet of Defendant Sununu and from attending Executive Council meetings involving him. These restrictions further demonstrate Defendant Sununu's personal involvement in the retaliatory actions.

89. Plaintiffs seek to hold Defendant Sununu liable only for his own actions and decisions undertaken under color of state law.

**Defendant Sergeant Meghan Walsh**

90. Defendant Meghan Walsh was a supervising member of the New Hampshire State Police assigned to the October 13, 2021 Executive Council meeting.

91. Defendant Walsh issued the general warning advising attendees that continued disruptions could result in arrest for disorderly conduct.

92. Defendant Walsh personally arrested Plaintiff Marylyn Todd.

93. Defendant Walsh's participation in issuing warnings and personally carrying out one of the arrests forms part of the basis for Plaintiffs' claims.

**Defendant Derek Myrdek**

94. Defendant Derek Myrdek was assigned as a member of the New Hampshire State Police security detail for the October 13, 2021 Executive Council meeting.

95. Defendant Myrdek personally participated in the arrest of Plaintiff Albert Todd.

96. Plaintiffs seek to hold Defendant Myrdek liable for his own actions in carrying out that arrest.

**Defendant Brandon Rivard**

97. Defendant Brandon Rivard was assigned as a member of the New Hampshire State Police security detail for the October 13, 2021 Executive Council meeting.

98. Defendant Rivard personally participated in the arrest of Plaintiff Albert Todd.

99. Plaintiffs seek to hold Defendant Rivard liable for his own actions in carrying out that arrest.

**Defendant Daniel Livingstone**

100.    Defendant Daniel Livingstone was assigned as a member of the New Hampshire State Police security detail for the October 13, 2021 Executive Council meeting.

101. Defendant Livingstone personally participated in the arrest of Plaintiff Monica Holm.

102. Plaintiffs seek to hold Defendant Livingstone liable for his own actions in carrying out that arrest.

**Defendant Brandon Stubbs**

103. Defendant Brandon Stubbs was assigned as a member of the New Hampshire State Police security detail for the October 13, 2021 Executive Council meeting.

104. Defendant Stubbs personally participated in the arrest of Plaintiff John Schmitt.

105. Plaintiffs seek to hold Defendant Stubbs liable for his own actions in carrying out that arrest.

**Defendant Chad Lavoie**

106. Defendant Chad Lavoie was a supervisory member of the New Hampshire State Police assigned to the October 13, 2021 Executive Council meeting.

107. Defendant Lavoie personally identified Plaintiff John Schmitt for removal.

108. Discovery produced in the related criminal proceedings identifies Defendant Lavoie as having supervisory responsibilities associated with the law-enforcement operation conducted during the meeting.

109. Plaintiffs seek to hold Defendant Lavoie liable for his own supervisory conduct and for his personal participation in the arrest of Plaintiff John Schmitt.

**Defendant Mark Hall**

110. Defendant Mark Hall served in a supervisory capacity within the New Hampshire State Police during the events described herein.

111.    Discovery produced in the related criminal proceedings identifies Defendant Hall as having supervisory responsibilities associated with the law-enforcement operation conducted during the October 13, 2021 Executive Council meeting.

112.    Plaintiffs allege that Defendant Hall exercised supervisory authority over the operation giving rise to the arrests challenged in this action.

**Defendant Charles O'Leary**

113.    Defendant Charles O'Leary participated in the law-enforcement operation conducted during the October 13, 2021 Executive Council meeting.

114.    Discovery produced in the related criminal proceedings identifies Defendant O'Leary as participating in that operation.

115.    Plaintiffs seek to hold Defendant O'Leary liable only for his own conduct in connection with the events giving rise to this action.

**Defendant New Hampshire State Police**

116.    At all relevant times, members of the New Hampshire State Police planned, staffed, coordinated, and executed the law-enforcement operation conducted during the October 13, 2021 Executive Council meeting.

117.    Discovery produced in the related criminal proceedings reflects that officers were assigned specific operational roles before the meeting began, including assignments to an arrest team.

118.    The arrests challenged in this action were carried out by members of the New Hampshire State Police acting under color of state law.

**John Does 1–10**

119.    Plaintiffs presently believe that additional law-enforcement officers participated in the planning, supervision, transportation, processing, or execution of the arrests challenged herein.

120.    Despite reasonable diligence, Plaintiffs have not yet been able to identify those individuals.

121.    Those individuals are presently identified as John Does 1–10.

122.    Plaintiffs will seek leave to substitute their true identities upon discovery.

## COUNT I – FIRST AMENDMENT RETALIATORY ARREST UNDER 42 U.S.C 1983
**(Against Defendants Sununu, Walsh, Myrdek, Rivard, Livingstone, Lavoie, Hall, Stubbs, and John Does 1–10)**

123.    Plaintiffs repeat and reallege Paragraphs 1 through 122 as if fully set forth herein.

124.    The First Amendment protects speech criticizing government action, questioning police conduct, and reacting verbally to arrests occurring at a public governmental meeting.

125.    Plaintiffs engaged in protected speech when, during a public Executive Council meeting and after the meeting had already been paused, they made brief verbal statements questioning why individuals were being arrested.

126.    Plaintiffs' speech concerned official governmental conduct and law-enforcement action occurring in real time at a public meeting on matters of public concern.

127.    Plaintiffs' speech was brief, non-threatening, and did not constitute violence, fighting words, threats, physical interference, or disruption of an active proceeding.

128.    Defendants, acting under color of state law, subjected Plaintiffs to adverse action by arresting them immediately after and because they engaged in that protected speech.

129.    The close temporal proximity between Plaintiffs' speech and their arrests, together with the absence of individualized probable cause and the minimal and inconsistent charging descriptions, supports the inference that Plaintiffs were arrested in retaliation for their speech.

130.    Plaintiffs' speech occurred during a paused interval in which multiple other attendees engaged in materially identical expressive conduct, including questioning the arrests, yet were not themselves arrested.

131.    No reasonable officer could conclude that Plaintiffs' brief, non-disruptive speech—identical in substance to that of other attendees—provided a lawful basis for arrest.

132.    At the time of the arrests, the meeting had already been paused, Plaintiffs were not disrupting an active proceeding, and Defendants lacked a constitutionally sufficient basis to arrest Plaintiffs for their speech.

133.    Defendants Sununu, Walsh, Myrdek, Rivard, Livingstone, Lavoie, Hall, Stubbs, and John Does 1–10 each personally participated in, directed, approved, or knowingly acquiesced in the retaliatory arrests of one or more Plaintiffs.

134.    Defendant Sununu personally paused the meeting immediately before the sequential arrests of Plaintiffs.

135.    Defendant Walsh issued the general arrest warning to the crowd and directly participated in the arrest of Plaintiff Marylyn Todd.

136.    Defendants Myrdek and Rivard directly participated in the arrest of Plaintiff Albert Todd.

137.    Defendants Lavoie and Stubbs directly participated in the arrest of Plaintiff John Schmitt.

138.    Defendant Livingstone directly participated in the arrest of Plaintiff Monica Holm, and Defendant Hall participated in the sequence leading to that arrest by asserting that he warned her immediately beforehand.

139.    A reasonable officer would have understood that arresting individuals for brief, non-threatening speech questioning police action at a paused public meeting violated clearly established First Amendment rights.

140.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiffs suffered loss of liberty, emotional distress, humiliation, and other compensable injuries.

141.    Defendants acted intentionally, willfully, maliciously, and in reckless disregard of Plaintiffs' clearly established constitutional rights.

142.    Defendants' actions cannot be explained by neutral enforcement of any law and instead support a plausible inference of retaliatory and selective enforcement.

## COUNT II – FOURTH AMENDMENT FALSE ARREST/UNREASONABLE SEIZURE UNDER 42 U.S.C 1983
**(Against Defendants Sununu, Walsh, Myrdek, Rivard, Livingstone, Lavoie, Hall, Stubbs, O'Leary, and John Does 1–10)**

143.    Plaintiffs repeat and reallege Paragraphs 1 through 142 as if fully set forth herein.

144.    The Fourth Amendment prohibits unreasonable seizures, including warrantless arrests unsupported by probable cause.

145.    Defendants, acting under color of state law, seized and arrested Plaintiffs without warrants.

146.    At most, Plaintiffs engaged in brief, non-threatening speech in response to law enforcement activity during a public meeting that had already been paused and was no longer in active session.

147.    Because the meeting had already been paused when Plaintiffs spoke, Defendants lacked probable cause to believe that Plaintiffs were then disrupting an active governmental proceeding.

148.    Defendants lacked individualized probable cause to arrest Plaintiffs, as the conduct attributed to each Plaintiff consisted of brief, non-threatening verbal statements that did not constitute disorderly conduct under clearly established law. The conduct attributed to Plaintiffs was indistinguishable from that of numerous other attendees who were not arrested.

149.    As to Plaintiff Marylyn Todd, the charging description attributed statements to her that are inconsistent with the available video evidence.

150.    As to Plaintiff Albert Todd, the charging descriptions were generalized and did not clearly identify specific conduct sufficient to establish probable cause. The resulting criminal charge was so vague that defense counsel was required to seek a bill of particulars.

151.    As to Plaintiff John Schmitt, the conduct attributed to him consisted of speech criticizing the arrests and government officials, not violence or physical interference.

152.    As to Plaintiff Monica Holm, no document produced in discovery identifies specific conduct during the interval immediately preceding her arrest that would constitute

*Marylyn Todd, et al v. Christopher Sununu, et al*
Case Number: 1:24-CV-00330
**Amended Civil Complaint**

19

disorderly or disruptive behavior, and video recordings reflect that she sat down and appeared non-disruptive before Defendant Livingstone arrested her.

153.    The charging documents, attached hereto as (Exhibit A), themselves reflect only minimal, generalized, and inconsistent descriptions of alleged conduct, including 'yelled,' 'uttered,' and 'loud noises,' further demonstrating the absence of a sufficient factual basis for probable cause.

154.    Video recordings, including a recording taken directly from behind the individual who was described in charging documents as having "yelled amen" and was subsequently arrested, reflect that other attendees made audible remarks during the meeting, including statements similar in nature to those attributed to Plaintiffs, and were not subjected to arrest. In contrast, the charging documents attached as (Exhibit A) characterize similar conduct as 'yelled,' while related criminal filings attached as (Exhibit B) describe that same conduct as 'uttered,' reflecting inconsistent descriptions of materially similar speech.

155.    The charging documents were executed by a single officer, Defendant Trooper Charles O'Leary, despite the involvement of multiple officers in the underlying events.

156.    The generalized nature of the charges was such that defense counsel was required to seek bills of particulars because the State had not clearly identified the specific conduct allegedly attributable to each Plaintiff.

157.    All criminal charges against Plaintiffs were subsequently dismissed by the State, which is consistent with the absence of probable cause at the time of arrest.

158.    Defendants Sununu, Walsh, Myrdek, Rivard, Livingstone, Lavoie, Hall, Stubbs, and John Does 1–10 personally participated in, directed, approved, or knowingly

acquiesced in the warrantless arrests challenged herein. Defendant O'Leary prepared and executed the charging documents used to justify those arrests.

159.    No reasonable officer could have believed that probable cause existed to arrest Plaintiffs where the meeting had already been paused, Plaintiffs' conduct consisted at most of brief verbal reactions to arrests occurring in front of them, and the State's own charging documents failed to identify clear, individualized criminal conduct.

160.    Plaintiffs were therefore subjected to unreasonable arrests and unlawful detention of their minor child in violation of the Fourth Amendment.

161.    As a direct and proximate result of Defendants' unlawful arrests and the illegal detention of their minor child, Plaintiffs suffered loss of liberty, emotional distress, humiliation, reputational harm, and other compensable injuries.

162.    Defendants acted intentionally, willfully, maliciously, and in reckless disregard of Plaintiffs' clearly established Fourth Amendment rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

**A.** A declaration that Defendants' actions, as alleged herein, violated Plaintiffs' rights under the First and Fourth Amendments to the United States Constitution;

**B.** An award of compensatory damages in an amount to be determined at trial for the loss of liberty and the intentional infliction of emotional distress, humiliation, reputational harm, and other injuries suffered by Plaintiffs;

**C.** An award of punitive damages against the individual Defendants to deter similar misconduct in the future;

**D.** An award of reasonable costs and any allowable fees, including attorney's fees, associated with this action pursuant to 42 U.S.C. § 1988 and other applicable law;

**E.** Pre-judgment and post-judgment interest as permitted by law;

**F.** Such other and further relief as this Court deems just and proper.

**Each Plaintiff further affirms that they understand the claims asserted herein and adopt the allegations as they pertain to them individually.**

                                        Respectfully submitted,

Date: <u>July 10, 2026</u>                        /s/ Marylyn Todd
                                        Marylyn Todd, Plaintiff


Date: <u>July 10, 2026</u>                        /s/ Albert Todd
                                        Albert Todd, Plaintiff


Date: <u>July 10, 2026</u>                        /s/ Monica Holm
                                        Monica Holm, Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a copy of the foregoing document was served electronically through the Court's CM/ECF system upon all parties who are registered users of that system. Any Defendants who have not yet been served or who are not registered CM/ECF users will be served in accordance with Rule 4 of the Federal Rules of Civil Procedure.


Date: <u>July 10, 2026</u>                         /s/ Marylyn Todd
                                                  Marylyn Todd, Plaintiff


Date: <u>July 10, 2026</u>                         /s/ Albert Todd
                                                  Albert Todd, Plaintiff


Date: <u>July 10, 2026</u>                         /s/ Monica Holm
                                                  Monica Holm, Plaintiff